IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEITH SUGGS                           :

                                      :

        v.                            :   Civil Action No. DKC 14-1903

                                      :

7-ELEVEN, INC.                        :

                                      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are two motions: (1) a motion to dismiss filed by Defendant 7-Eleven, Inc. ("7-Eleven") (ECF No. 12); and (2) a motion for leave to file a second amended complaint filed by Plaintiff Keith Suggs (ECF No. 18). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss will be denied and Plaintiff's motion for leave to file a second amended complaint will be granted.

**I.   Background**

   **A.   Factual Background**

Plaintiff, an African American male, has been employed as a Field Consultant with 7-Eleven since August 31, 2009. (ECF No. 10 ¶ 2). Plaintiff oversaw a subgroup of nine 7-Eleven stores in 7-Eleven's Market 2541. (*Id.*). 7-Eleven Field Consultants

report to Market Managers, who evaluate them twice annually (mid-year and year-end) in performance appraisals, which are based on a combination of objective and subjective criteria:

> Field Consultants are initially awarded a "red," "yellow," or "green" score on a non-discretionary basis in several categories designed to measure objective factors such as the profitability, cleanliness, and organization of the stores that the[y] supervise, with "green" indicating that their stores are above-standard in a particular category, "yellow" indicating that their stores are at standard, and "red" indicating that their stores are below standard.  The number of "green," "yellow," and "red" ratings are then tallied, and the Field Consultant is awarded a grade of "A," "B," and "C," with "A" [being] the highest and "C" the lowest grade possible.  These grades are not awarded on a discretionary basis by the Market Manager but are based [on a] comparison of either aggregate store revenue or percentages of stores meeting certain measurable benchmarks.  Field Consultants also receive a grade of "+," "/" or "-" from their Market Managers on soft factors such as "Integrity," "Guest Focus," and "Accountability."  7-Eleven has claimed that it only considers Field Consultants for promotion to Market Manager if the Field Consultant has earned an A+, B+, or A/ on his or her most recent full-year performance appraisal.

(ECF No. 10 ¶¶ 10-13).  Plaintiff alleges that on his first full-year evaluation covering the 2010 calendar year he received a positive evaluation of B/ from his supervisor, Scott Teachenor, a white male.  In October 2011, Plaintiff's supervisor was replaced by Mike Crist ("Crist"), another white

2

male.  (*Id.* ¶ 15).  Plaintiff alleges that he observed Crist treating white Field Consultants more favorably than African American Field Consultants.  (*Id.* ¶ 16).  As an example, Plaintiff alleges that in late 2011, Crist refused to let an African American employee, Dahir Amalo, who had been serving as a Customer Experience Consultant ("CEC"), return to his position as a Field Consultant, which was a typical transition after serving as a CEC.  Crist allegedly informed Amalo that there were no Field Consultant positions available in Market 2541, and then two weeks later hired Alex Boland, a white male, as a Field Consultant in Market 2541.  (*Id.* ¶ 21).

In an October 2011 meeting, Plaintiff complained to Crist that Field Consultants were not being promoted within his market.  Plaintiff also complained that African American Field Consultants had difficulty achieving promotions.  (*Id.* ¶ 19). On November 11, 2011, Plaintiff made an oral complaint to a member of 7-Eleven's Human Resources Department about the disparate treatment of African American and white Field Consultants in his market.  (*Id.* ¶ 20).  Plaintiff formalized this complaint in an email to Defendant's Human Resources Department on November 13, 2011.  (*Id.*).

On February 9, 2012, Plaintiff wrote a letter to Tom Brennan, a white male who was Plaintiff's Zone Manager, complaining of the disparate treatment by Crist of Plaintiff and

other African American Field Consultants. (*Id.* ¶ 22).
Plaintiff also stated in this letter that he was "very fearful
[he] will be retaliated [against] in a manner that will result
in the loss of my job or movement to another market." (*Id.*)
(alterations in original).

In February 2012, Plaintiff received his 2011 year-end
performance appraisal from Crist. (*Id.* ¶ 23). Plaintiff
alleges that Crist visited Plaintiff's stores only twice during
his three months as Market Manager, yet changed several ratings
on Plaintiff's performance appraisal as compared to Plaintiff's
mid-year review, despite his acknowledgement of the "limited
amount of time that [he] had spent with [Plaintiff's] stores."
(*Id.*). Plaintiff expressed disagreement with Crist's evaluation
and refused to sign it. (*Id.*). On February 27, 2012, following
receipt of his 2011 year-end performance appraisal, Plaintiff
filed a Charge of Discrimination (Charge No. 531-2012-00897)
with the EEOC alleging race discrimination and retaliation.
(*Id.* ¶ 25). On April 24, 2012, Defendant filed a response to
Plaintiff's Charge No. 531-2012-00897. (*Id.* ¶ 28).

In March 2012, Brennan indicated to Crist and other Market
Managers that Field Consultants were needed to travel to
Charlotte, North Carolina to assist with store conversion in
that market. (*Id.* ¶ 26). According to Plaintiff, Brennan
stated that Field Consultants should not be asked to Charlotte

4

more than once in order to expand the opportunity for Field Consultants to gain visibility, which was helpful for promotion. (*Id.*).  Unlike other Market Managers, Crist did not share this posting with his Field Consultants.  (*Id.*).  Instead, Crist selected a new, white Field Consultant named Alex Boland, whom Plaintiff believed particularly needed to spend time in his stores because he was new, to attend two week-long stretches in Charlotte. (*Id.*).

On July 19, 2012, nearly five months after Plaintiff's initial filing of a charge with the EEOC, Crist placed Plaintiff on a performance improvement plan ("PIP").  (*Id.* ¶ 29). According to Plaintiff, Crist's stated reasons for placing him on the PIP were for: (1) leaning back in his chair, rolling his eyes, turning his back, and sighing during a five minute teleconference with Brennan; (2) exhibiting unprofessional and disrespectful body language in three staff meetings; and (3) failing to turn in a one-page leadership essay that he was expected to write as part of his recognition for posting the highest cumulative score in his market in March.  (*Id.* ¶ 29). Defendant failed to follow its own Progressive Discipline Policy by placing him on the PIP, in part, because Crist purportedly did not verbally discuss the specific violation or consequences with Plaintiff before placing him on the PIP.  (*Id.* ¶ 30). Plaintiff also alleges that PIPs are supposed to be used for

"job   performance-related   issues," not   as   disciplinary
procedures.   (*Id.* ¶ 31).   According   to   Plaintiff,   he   did   not
exhibit   disrespectful   body   language   as   alleged   by   Crist,   nor   is
Plaintiff   aware   of   an   employee   being   placed   on   a   PIP   for   such
conduct.   In   addition,   Plaintiff   alleges   that   other   Field
Consultants   were   not   disciplined   for   turning   in   leadership
essays   late.   (*Id.* ¶ 34).   On   July   20,   2012,   the   day   after
Plaintiff   was   placed   on   a   PIP,   he   filed   an   amended   charge   with
the   EEOC   alleging   that   he   had   been   placed   on   the   PIP   in
retaliation   for   his   complaints   of   discrimination.   (*Id.* ¶ 37).
Defendant   filed   a   response   to   this   amended   charge   on   September
10, 2012.   (*Id.* ¶ 38).

On   multiple   occasions   from   2011   to   2012,   Plaintiff   notified
7-Eleven   of   his   interest   in   a   promotion.   For   example,   on   his
2011   performance   appraisal,   Plaintiff   indicated   he   was
interested   in   a   promotion   to   a   managerial   position.   (*Id.* ¶ 24).
Again   in   July   2012,   Plaintiff   told   his   supervisor   that   he   was
interested   in   a   promotion   to   the   acquisitions   team,   and   was   told
that   no   positions   were   available.   (*Id.* ¶ 39).   Plaintiff
inquired   again   in   September   2012,   and   received   the   same   response
from   Defendant   that   no   positions   were   available.   (*Id.*).
Plaintiff   alleges   that   in   March   and   April   2012,   he   was   a   top-
performing   Field   Consultant   earning   an   "A"   rating   both   months.
(*Id.* ¶ 27).   Plaintiff   asserts   that   through   September   2012   he

6

was performing at an "A" level based on the performance metrics used in 7-Eleven's performance appraisal, yet he was given an overall "B" rating for 2012.

Plaintiff also asserts that he had access to the "scorecards" of other field consultants in his market, which contained the non-discretionary components of their performance appraisals (green, yellow, and red ratings). (*Id.* ¶ 40). On December 21, 2012, Plaintiff learned that 7-Eleven promoted Sean Kennedy, a white Field Consultant whom Plaintiff argues was less qualified than himself, to Division Logistics Manager. (*Id.* ¶ 46). Plaintiff alleges that based on 7-Eleven's own stated policy of only promoting Field Consultants who achieved an A+, A/, or B+ on their most recent full-year performance appraisal, Kennedy should have been ineligible for promotion in 2012. (*Id.* ¶ 43). Specifically, Plaintiff asserts that Kennedy received a "C" on his 2011 performance appraisal, and continued to perform at a "C" level through at least July 2012. (*Id.* ¶¶ 42, 44). Plaintiff also asserts that Kennedy had a reputation as "a low-performing Field Consultant who did not regularly visit his stores and was prone to inappropriate comments." (*Id.* ¶ 45). Plaintiff acknowledges that he never applied for this position, but alleges that 7-Eleven did not post or did not post conspicuously the Division Logistics Manager position, and that he would have applied for it had it had he been made aware of

it.  (*Id.* ¶¶ 47, 49).  Plaintiff additionally alleges that Defendant's promotion policy was vague and secretive and that employees were typically sought out by managers for promotion. (*Id.* ¶ 51).  In the alternative, Plaintiff excuses his failure to apply alleging that Defendant failed to notify him of its decision to relax or ignore its stated criteria for promotions. (*Id.* ¶ 60).  According to Plaintiff, Defendant had misleadingly stated on multiple occasions that it only promotes Field Consultants who receive an A+, A/, or B+ on their most recent full-year performance appraisal. (*Id.* ¶ 50).  Because Plaintiff received a "B" on his most recent performance appraisal, Plaintiff believed he was ineligible and that it was futile to apply. (*Id.*).  On January 23, 2013, Plaintiff filed Charge No. 531-2013-00734 with the EEOC, complaining of Defendant's discriminatory decision to promote Kennedy, a purportedly less qualified white Field Consultant, to the Division Logistics Manager position instead of Plaintiff. (*Id.* ¶ 53).

   **B.   Procedural Background**

   On January 27, 2014, the EEOC sent Plaintiff Right to Sue letters on both EEOC Charges (Charge No. 531-2013-00734 and Charge No. 531-2012-00897). (*Id.* ¶ 54).  Plaintiff filed and served his initial complaint in this action on June 12, 2014. (ECF No. 1).  In his complaint, Plaintiff alleges that 7-Eleven discriminated against him on the basis of race and retaliated

against him in violation of Title VII of the Civil Rights Act of 1964. In addition, Plaintiff asserts that Defendant discriminated and retaliated against him in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), and Md. Code Ann., State Gov't § 20-606 *et seq.* Specifically, Plaintiff alleges that 7-Eleven's placing him on a performance improvement plan ("PIP"), and its failure to promote him were discriminatory and in retaliation for filing of EEOC charges. Plaintiff seeks a declaratory judgment, compensatory damages, back pay and front pay, and attorneys' fees.

On August 11, 2014, Defendant moved to dismiss Plaintiff's complaint. (ECF No. 6). Plaintiff then filed a first amended complaint. (ECF No. 10). On September 15, 2014, Defendant again moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. (ECF No. 12). This motion is fully briefed. (ECF Nos. 15 & 16). On December 12, 2014, Plaintiff moved to file a second amended complaint. This motion is also fully briefed. (ECF Nos. 19 & 20).

## II. Defendant's Motion to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A

plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 n.3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal,* 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979);

*see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (*quoting* Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The recent analysis undertaken by the United States Court of Appeals for the Fourth Circuit explaining the standard of review on a motion to dismiss in the context of a Title VII claim is instructive:

> Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation marks and citation omitted). But this rule for pleading "requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Instead, a complaint must contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." *Id.;* see also *Iqbal,* 556 U.S. at 678 (holding that a complaint "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not "suffice" (quoting *Twombly,* 550 U.S. at 557)). The Supreme Court has accordingly held that Rule 8(a)(2)

> requires that "a complaint . . . contain[]
> sufficient factual matter, accepted as true,
> to 'state a claim to relief that is
> plausible on its face'" in the sense that
> the complaint's factual allegations must
> allow a "court to draw the reasonable
> inference that the defendant is liable for
> misconduct alleged." *Iqbal*, 556 U.S. at 678
> (emphasis added).

*McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.,* 780 F.3d 582, 585 (4th Cir. 2015).

**B.   Analysis**

Plaintiff asserts claims of race discrimination and retaliation based on two separate acts by 7-Eleven: (1) placement of Plaintiff on a performance improvement plan ("PIP") in July 2012; and (2) failure to promote Plaintiff for the Division Logistics Manager position in December 21, 2012. Plaintiff's discrimination and retaliation claims are based on Defendant's purported violation of three separate statutes: Title VII; Section 1981; and Title 20 of the Maryland State Government Article § 20-606.  Courts analyze discrimination and retaliation claims under Title VII and Section 1981 using the same framework, and therefore, these claims are generally considered together.  *See James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 376 n.1 (4th Cir. 2004) (noting that the elements of a *prima facie* case of race discrimination are the same under Title VII and Section 1981); *Boyer-Liberto v. Fontainebleau Corp.,* No. 13-1473, 2015 WL 2116849, at *13 (4th Cir. May 7,

2015) (noting that *prima facie* retaliation claims under Title VII and Section 1981 have the same elements). Moreover, Title 20, otherwise known as Maryland's Fair Employment Practices Act ("MFEPA"), is the "state-law analogue" to Title VII, and courts routinely look to Title VII cases to determine the scope of liability under MFEPA. *See Haas v. Lockheed Martin Corp.,* 396 Md. 469, 482 n.8 (2007) (noting that "Title VII is the federal analog to Art. 49B of the Maryland Code"); Md. Code Ann., State Gov't § 20-606 (noting that "[t]his section is new language derived without substantive change from former Art. 49B, § 16(a) through (f)"); *see also Chappell v. S. Maryland Hosp., Inc.,* 320 Md. 483, 494 (1990) ("[W]e read § 16(f) of the [Maryland] state [retaliation] act in harmony with § 2000e-3(a) of the federal [retaliation] statute, and therefore construe the two provisions to fulfill the same objectives . . . [and] may look to court decisions interpreting § 2000e-3(a)."). Accordingly, Plaintiff's Title VII, Section 1981, and MFEPA claims will be analyzed together for the purposes of this motion.

Title VII of the Civil Rights Act prohibits status-based discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2525 (2013). Title VII also prohibits retaliation by the employer against employees who engage in a protected

activity.  *Id.*  Protected activity includes opposing "unlawful employment practice[s] [under] this subchapter" or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in . . . [a Title VII] investigation, proceeding, or hearing[.]"  42 U.S.C. § 2000e-3(a).

### 1.  Placement on PIP

In order for a plaintiff's Title VII race discrimination claim to survive a motion to dismiss, he must allege that 7-Eleven discriminated against him or otherwise treated him less favorably "with respect to his compensation, terms, conditions, or privileges of employment, *because of* [his] race[.]"  42 U.S.C. § 2000e-2(a)(1) (emphasis added); *McCleary-Evans,* 780 F.3d at 585-86 (noting that "[w]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss . . . factual allegations must be enough to raise a right to relief above the speculative level") (internal citations and quotation marks omitted)).  Defendant contends that in order to state a claim for race discrimination, the complaint must include factual allegations showing that: (1) plaintiff is a member of a protected class; (2) he suffered an adverse employment action; (3) he suffered this adverse action despite performing his job in accordance with the employer's legitimate expectations; and (4) the circumstances gave rise to an inference of unlawful discrimination.  (ECF No.

14

12-1, at 12) (*citing Adams v. Trustees of the Univ. of N.C.-Wilmington,* 640 F.3d 550, 558 (4th Cir. 2011)).  At the motion to dismiss stage, however, Plaintiff is not required to set forth a *prima facie* case for each element; instead, he is required to set forth a plausible claim of discrimination.  *See, e.g., Doyle v. City of Chicago,* 943 F.Supp.2d 815, 823 (N.D.Ill. 2013) ("At the motion to dismiss stage, a complaint need not allege facts in support of each element, and it is sufficient if it alleges that the employee was discriminated against because of his race.") (internal quotation marks omitted).  A plaintiff in an employment discrimination suit is generally required to plead that the employer took an adverse action against him "under circumstances which give rise to an inference of unlawful discrimination."  *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

To establish a *prima facie* retaliation claim, a plaintiff must show that: (1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action.  *See Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 218 (4th Cir. 2007) (*citing Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir. 1997)).  "The anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  *Burlington N. & Santa Fe Ry.*

*Co. v. White,* 548 U.S. 53, 67 (2006).  Unlike for discrimination claims, a plaintiff need not establish an "ultimate employment decision" to make a *prima facie* case of retaliation.  *James,* 368 F.3d at 375–76.  Rather, he must show a *materially adverse* employment action, meaning that the "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington,* 548 U.S. at 57, 67–68 (describing this determination as an objective standard from the viewpoint of a reasonable employee).

Plaintiff alleges that Crist discriminated against him because of his race and retaliated against him for filing his initial EEOC charge in February 2012 by placing him on a PIP in July 2012.  Defendant argues that these claims should be dismissed because Plaintiff cannot establish that his placement on a PIP is an adverse employment action, as that term is defined for each claim.  Defendant challenges Plaintiff's retaliation claim on an additional ground, arguing that Plaintiff has not sufficiently alleged a causal connection between his filing of EEOC charges and Defendant's placement of him on a PIP.

a.    **Adverse Employment Action**

Defendant argues that its placement of Plaintiff on a PIP was not an adverse employment action for the discrimination

claim because it did not alter the terms or conditions of Plaintiff's employment, nor did it result in other adverse consequences. (ECF No. 12-1). Defendant contends that the PIP did not affect the terms of his employment because Plaintiff remained in his same job position with the same responsibilities and the same rate of pay. (*Id.*).

The Fourth Circuit has explained that "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of a plaintiff's employment." *Holland,* 487 F.3d at 219 (internal citations and quotation marks omitted). The Fourth Circuit has described an adverse employment action as one that "'constitutes a significant change in employment status, such as hiring, firing, *failing to promote*, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 337 (4th Cir. 2011) (emphasis added) (*quoting Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)). Typically, an adverse employment action has been found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion. *Wright v. Kent Cnty. Dep't of Soc. Servs.*, No. CIV.A. ELH-12-3593, 2014 WL 301026, at *1 (D.Md. Jan. 24, 2014) (*quoting Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).

"Although conduct short of ultimate employment decisions can constitute adverse employment actions, there still must be a tangible effect on the terms and conditions of employment." *Geist v. Gill/Kardash P'ship,* 671 F.Supp.2d 729, 737 n.6 (D.Md. 2009). Moreover, as Judge Grimm recently noted in *Ruffin v. Lew*, No. PWG-11-2469, 2014 WL 4854972, at *8 (D.Md. Sept. 29, 2014), conduct short of an ultimate employment decisions becomes relevant if it is a "mediate step relied upon for a true adverse employment action." *Id.* (*quoting Jeffers v. Thompson,* 264 F.Supp.2d 314, 330 (D.Md. 2003) ("Like a reprimand, a poor performance rating does not in itself constitute an adverse employment action. 'Rather, it is a mediate step, which, if relied upon for a true adverse employment action (e.g., discharge, demotion, etc.) becomes relevant evidence.'" (internal citations omitted)).

Plaintiff has sufficiently alleged that his placement on the PIP is an adverse employment action because he alleges that it was coupled with a failure to promote, which had a detrimental effect on Plaintiff's employment status. As noted by Plaintiff, Defendant has intimated that Plaintiff's placement on the PIP may have influenced its failure to promote Plaintiff. (ECF No. 15, at 19). Specifically, Defendant states that the "fact that Plaintiff was placed on a PIP in the middle of the year is far better evidence of Plaintiff's . . . qualification

for promotion," or lack thereof.   (ECF No. 12-1, at 10).
Defendant also acknowledges in its motion that an "employee on a
PIP is generally not a candidate for promotion."   (ECF No. 16,
at 5).   In sum, placement on the PIP can be viewed as a *mediate
step* that was relied upon in making a true adverse employment
action, Defendant's failure to promote Plaintiff to Division
Logistics Manager.   In addition, the consequences of being
placed on the PIP, namely diminished opportunities for future
promotions, could certainly dissuade a reasonable employee from
filing a discrimination claim.

Defendant also contends that a reasonable employee would
not have found the challenged action materially adverse as
necessary for a retaliation claim, and that placement on the PIP
did not dissuade Plaintiff from making a charge of
discrimination, as Plaintiff amended his EEOC charge one day
after he was placed on the PIP.   (*Id.*).   Courts have rejected
the argument that an employee's filing of a claim is proof that
he was not dissuaded from making a charge of discrimination.
*See, e.g., Dones v. Donahoe*, 987 F.Supp.2d 659, 672 (D.Md. 2013)
("Accepting that argument would eviscerate the anti-retaliation
protection; an employer could always argue that the fact that
the employee filed the claim is proof that he was not dissuaded
from making a charge of discrimination.").   Defendant's argument
will similarly be rejected here because as noted in *Dones*,

accepting this argument would turn *Burlington Northern's* lesser standard for retaliation claims into a nullity. *Id.*

### b. Causal Connection

Defendant also contends that Plaintiff's retaliation claim should be dismissed because the lengthy time lapse of five months between Plaintiff's filing of an EEOC charge and Plaintiff's placement on the PIP negates any inference of a causal connection for retaliation.

The Fourth Circuit has held that a "causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment against an employee shortly after learning of the protected activity." *See Pepper v. Precision Valve Corp.*, 526 F.App'x 335, 337 (4th Cir. 2013) (alteration in original) (internal citation and quotation marks omitted). Ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (internal citation and quotation marks omitted). A "lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Id.* (*quoting Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). In "cases where 'temporal proximity between protected activity

and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Wright,* 2014 WL 301026 at *20 (internal citation omitted) (*quoting Lettieri v. Equant*, Inc., 478 F.3d 640, 650 (4th Cir. 2007)). Circumstantial evidence which is probative of a retaliatory animus can overcome a lack of temporal proximity. *See Westmoreland v. Prince George's Cnty.*, Md., 876 F.Supp.2d 594, 613 (D.Md. 2012).

Plaintiff has plausibly alleged a causal connection. Plaintiff alleges that he first complained of Crist's disparate treatment of white and African American Field Consultants in November 2011 to 7-Eleven's Human Resources Department and in early February 2012 to Brennan his Zone Manager. Sometime in February 2012, Crist provided Plaintiff his year-end performance appraisal, in which he lowered several of Plaintiff's ratings from the mid-year review even though he had spent little time in Plaintiff's stores. Plaintiff then filed a formal EEOC complaint on February 27, 2012. Defendant filed a response to Plaintiff's EEOC charge on April 24, 2012, indicating that Defendant knew of Plaintiff's EEOC charge by that date. (ECF No. 10 ¶ 28). Plaintiff alleges that Crist placed him on a PIP approximately three months later on July 19, 2012. Moreover, Plaintiff alleges other facts that are probative of retaliatory animus. For example, Plaintiff alleges that Defendant

21

significantly departed from its own Progressive Discipline Policy, suggesting that Plaintiff was placed on the PIP for retaliatory rather than disciplinary reasons.  According to Plaintiff, Defendant has not previously disciplined Field Consultants for their "general body language" or placed employees on PIPs for such conduct.  (*Id.* ¶ 33).  Moreover, Crist allegedly deviated from 7-Eleven's disciplinary policy by placing Plaintiff on a PIP before verbally discussing the alleged performance incidents with Plaintiff.  (*Id.* ¶ 30). Finally, Plaintiff was told he was placed on a PIP, in part, because he failed to turn in a one-page leadership essay, while Plaintiff alleges that other Field Consultants were not disciplined for turning in leadership essays late.  Taken together, Plaintiff's allegations are sufficient to state a plausible causal connection between Plaintiff's protected activity and Defendant's placement of him on a PIP.

### 2.   Failure to Promote

Plaintiff alleges that Defendant discriminated and retaliated against him by failing to promote him for the Division Logistics Manager position on December 21, 2012.

### a.   Discriminatory Failure to Promote

Plaintiff alleges that Defendant discriminated against him by failing to promote him to Division Logistics Manager, instead

promoting a less qualified, white Field Consultant, Sean Kennedy.

Defendant contends that in order to state a *prima facie* case for discriminatory failure to promote, Plaintiff must allege facts showing that: (1) he is a member of a protected group, (2) he applied for the position in question, (3) he was qualified for the position, and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. (ECF No. 12-1, at 8) (*citing Brown v. McLean,* 159 F.3d 898, 902 (4th Cir. 1998)). Defendant moves to dismiss this claim contending that Plaintiff fails to meet the second and third elements of a *prima facie* case, namely, that Plaintiff has not sufficiently alleged that he applied for and was qualified for the position in question. (ECF No. 12, at 8). As noted by the Fourth Circuit in *McCleary-Evans,* however, Plaintiff need not plead every element of a *prima facie* case in order to survive a motion to dismiss; rather, he need only plead factual allegations sufficient to "raise his right to relief above the speculative level[.]" 780 F.3d at 585.

Taking the allegations in the complaint as true, Plaintiff has sufficiently alleged facts indicating that he would have applied for the promotion had it not been for Defendant's discriminatory practices. Plaintiff asserts that he notified 7-Eleven multiple times in 2011 and 2012 about his interest in a

promotion, and each time was told that no positions were available. Plaintiff also alleges that the position in question, Division Logistics Manager, was not posted or at least not conspicuously posted. Plaintiff asserts that he would have applied for this position if 7-Eleven had posted it in a reasonable manner. Plaintiff also asserts that "employees were typically sought out by managers for promotions," suggesting that 7-Eleven may have hand-selected Kennedy for promotion, rather than posting the position.[1] (ECF No. 10 ¶ 51). In the alternative, Plaintiff excuses his failure to apply by stating that Defendant failed to notify Plaintiff of its decision to relax or ignore its stated criteria for promotions. On multiple occasions, Plaintiff contends that Defendant misleadingly stated that it only promotes Field Consultants who received an A+, A/, or B+ rating on their most recent full-year performance appraisal, and he believed he was ineligible because he had received a "B" in 2011. Indeed, Defendant states in its response to Plaintiff's EEOC charge regarding its failure to promote him that Plaintiff was not eligible for a promotion pursuant to its full-year performance appraisal policy. (*Id.* ¶

---

[1] Indeed, Plaintiff points out that Crist purportedly hand-selected a brand new, white Field Consultant, Alex Boland, to go on two trips to Charlotte, which was thought to be a good opportunity to gain visibility and an increased change of promotion, rather than spreading the Charlotte opportunity to other Field Consultants, as Brennan had purportedly recommended.

28).   Defendant's  purportedly  misleading  statements  that  a
certain  rating  was  required,  may  have  led  Plaintiff  to  believe
it  was  futile  to  apply  for  a  promotion.

Defendant  also  asserts  that  Plaintiff  fails  to  state  a
claim  because  Plaintiff  cannot  show  that  he  possessed  any  of  the
required  skills  or  qualifications  needed  for  the  Division
Logistics  Manager  position.   (ECF  No.  12-1,  at  2).   Defendant
argues  that  Plaintiff  cannot  rely  on  his  own  conclusory
assessment  that  he  was  better  qualified  than  Kennedy  for  the
Division  Logistics  Manager  position.   Defendant  also  asserts
that  Plaintiff  acknowledges  that  he  was  not  qualified  for
promotion  because  of  his  "B"  rating  on  his  most  recent
performance  appraisal.   (ECF  No.  12-1,  at  9).   Moreover,
Defendant  states  in  its  motion  that  Plaintiff's  placement  on  the
PIP  was  "far-better  evidence"  that  Plaintiff  was  not  qualified
for  the  promotion.   (*Id.* at  10).

Plaintiff  relies  on  Kennedy  as  a  comparator  to  show  that
that  he  was  higher  performing  and  better  qualified  Field
Consultant  than  Kennedy,  who  received  the  promotion.   Plaintiff
first  points  to  objective  criteria,  noting  that  on  the  non-
discretionary  components  of  their  2011  performance  appraisals
Plaintiff  received  a  "B"  while  Kennedy  received  a  "C"  rating,
which  is  of  particular  importance  because  7-Eleven  said  it
"strongly  considers"  Field  Consultant's  performance  appraisals

25

in determining whether to promote a Field Consultant. (*Id.*).

Plaintiff also alleges that Kennedy performed at a "C" rating

through at least July 2012, while Plaintiff was allegedly

performing at an "A" level through September 2012. Plaintiff

also points out that Kennedy was promoted on December 21, 2012,

meaning his most recent full-year performance appraisal would

have been his 2011 appraisal, and based on Defendant's own

policy, Kennedy should have been ineligible for promotion in

2012 based on his "C" rating in 2011. In addition to objective

factors, Plaintiff points to several subjective criteria to show

that he is better qualified for the position than Kennedy.

Specifically, Plaintiff alleges that Kennedy has a reputation as

a "low-performing Field Consultant" who "did not regularly visit

his stores and was prone to inappropriate comments." (ECF No.

10 ¶ 45). For example, Kennedy allegedly sent an inappropriate

email to Crist and all the Field Consultants in Market 2541

reading, "Boner!" (*Id.*). Although Plaintiff does not directly

assert that having a good reputation is a requisite

qualification for this position, Defendant admits in its motion

to dismiss that Plaintiff's placement on the PIP was a good

indication of Plaintiff's lack of qualification for promotion.

Applying the same rationale, Kennedy's poor reputation as a low

performer and inappropriate behavior should have been "far-

better evidence" of Kennedy's lack of qualification for the promotion. (ECF No. 12-1, at 9).

Based on the foregoing, Plaintiff has plausibly alleged that 7-Eleven's promotion of Kennedy, who purportedly had lower performance appraisal ratings than Plaintiff and a poor reputation, instead of Plaintiff, was based on race.

### b.    Retaliatory Failure to Promote

Plaintiff alleges that Defendant retaliated against him for filing an EEOC charge by failing to promote him for the Division Logistics Manager position on December 21, 2012.  To establish a *prima facie* retaliation claim, a plaintiff must show that: (1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action.  *See Holland,* 487 F.3d at 218 (*citing Beall,* 130 F.3d at 619).

Defendant seeks to dismiss Plaintiff's retaliatory failure to promote claim on two grounds.  First, Defendant argues that Plaintiff has not shown he applied for or was qualified for the Division Logistics Manager position.  Second, Defendant contends that Plaintiff fails to allege a causal connection between Plaintiff's filing of an amended EEOC charge in July 2014 and its failure to promote him in December 2014 because of the five month time lapse between the two.

For the aforementioned reasons, Defendant's argument that Plaintiff has not sufficiently alleged that he applied for or was qualified for the Division Logistics Manager position will be rejected.   Despite the five month time lapse between Plaintiff's protected activity and the alleged adverse employment action, Plaintiff has sufficiently alleged a causal connection between his protected activity and Defendant's promotion of Kennedy.   In the months preceding Kennedy's promotion, July and September 2012, Plaintiff allegedly told Defendant about his interest in a promotion.   On both occasions, Defendant told Plaintiff that no positions were available. Despite knowing of Plaintiff's interest in promotion and that he was performing at an "A" level throughout most of 2012, Defendant refused to promote him and instead apparently hand-picked another employee, rather than posting the job or making Plaintiff aware of the vacancy.   (*Id.* at ¶¶ 24, 39, 47-49). Plaintiff also aptly points out that Defendant's underlying reasons why Plaintiff was not eligible for a promotion — his 2011 performance appraisal rating of a "B" and his placement on a PIP — were undeserved and were done by Crist out of discrimination and retaliation.   Taking Plaintiff's allegations as true, he has sufficiently alleged that 7-Eleven's failure to promote him in December 2012 was done out of retaliation for his prior engagement in protected activities.

### III. Plaintiff's Motion to Amend the Complaint

Plaintiff moved to file a second amended complaint pursuant to Fed.R.Civ.P. 15(a) on December 12, 2014, to add a claim for retaliation based on 7-Eleven's failure to let Plaintiff return to work after a medical leave of absence. (ECF No. 18). In Plaintiff's proposed second amended complaint, he alleges that Defendant cancelled his scheduled return to work in retaliation for his filing this lawsuit in June 2014. Specifically, Plaintiff alleges that beginning in February 2014, Plaintiff was out of work on approved unpaid medical leave. (ECF No. 18-2 ¶ 55). On October 14, 2014, Steve Saunders, Defendant's Human Resources Leader, sent Plaintiff a letter requesting that Plaintiff provide a date when he would be able to return to work at 7-Eleven. On October 21, 2014, Plaintiff provided 7-Eleven a doctor's note indicating that he could return to work on December 9, 2014. Saunders acknowledged receipt of Plaintiff's doctor's note with a letter to Plaintiff on November 3, 2014. During a November 4, 2014 phone call with Plaintiff, Saunders also indicated that he would be returning to work in his previous market (Market 2541)[2] and in his previous position (Field Consultant). In a December 2, 2014 phone call, Saunders

---

[2] Plaintiff's proposed amended complaint refers to his Market as 2541 and 2547, but his reference to Market 2547 appears to be an error, as all other filings refer to his Market as 2541.

reiterated that Plaintiff would be returning to work as a Field Consultant on December 9.   On December 5, 2014, Saunders sent Plaintiff a letter informing him that there were no open positions, stating that he had failed to check on the actual staffing level in Market 2541 until that date.   Saunders informed Plaintiff that he was to check back in thirty days regarding whether there was an open position in the market. Saunders also stated in the letter that Plaintiff was not expected to attend the 7-Eleven Experience, which is a conference held annually by 7-Eleven for its franchisees and employees.   Plaintiff alleges that he had already registered for the event and the event was to be held well after the thirty-day timeframe proposed by Saunders for checking back with him regarding the availability of a position.   Plaintiff alleges that, on information and belief, staffing of Field Consultants in Market 2541 was at sufficient levels to permit Plaintiff to return to work.

### A.   Standard of Review

Rule 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days after serving it; or 21 days after service of a responsive pleading; or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the courts leave.   The

court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).   The court should deny leave to amend only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal citation and quotation marks omitted); *Keller v. Prince George's Cnty.*, 923 F.2d 30, 33 (4th Cir. 1991) (upholding district court order denying plaintiff leave to amend his complaint to include claims that were barred by the applicable statute of limitations because such amendment would be futile).   "An amendment is futile when the proposed amendment is clearly insufficient or frivolous on its face, or if the amended claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *El-Amin v. Blom*, No. CCB-11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012) (internal citations and quotation marks omitted).

### B. Administrative Exhaustion

There is no indication that Plaintiff filed an administrative claim regarding the denial of return to work in December 2014.   Although Defendant does not argue that Plaintiff has failed to exhaust his administrative remedies with regard to this claim, because exhaustion is a jurisdictional issue it will be addressed briefly.   As noted by the Fourth Circuit in *Jones*

*v. Calvert Group, Ltd.,* 551 F.3d 297, 300 (4th Cir. 2009), in order to file a suit under Title VII a plaintiff must first file a charge of discrimination with the EEOC, and "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (*quoting Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996)). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Id.* (*citing Davis v. N. Carolina Dep't of Corr.,* 48 F.3d 134, 138-40) (4th Cir. 1995)). There is a relaxed exhaustion requirement for Title VII retaliation claims, however. *Id.* at 301-04. Indeed, as noted in *Jones,* retaliation claims that are reasonably related to allegations in an EEOC charge that is properly before the court that pertains to conduct that occurred after the EEOC charge was filed need not be filed in a new EEOC charge. *Id.* (refusing to limit the relaxed exhaustion requirement to retaliatory conduct occurring during the pendency of the administrative investigation of the prior EEOC charge, reasoning that a plaintiff who has already been retaliated against may be "gun shy" about filing further EEOC claims and that a second conciliation with the EEOC is

32

unlikely to be "any more fruitful than the first"); *Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir. 1992).  As in *Nealon*, 958 F.2d at 590, Plaintiff alleges that 7-Eleven retaliated against him for filing his initial EEOC charges, and then retaliated against him again for filing this action in federal court based on his initial EEOC charges.  Because Plaintiff's proposed retaliation claim relates to charges that are properly before the court, Plaintiff need not have filed a separate EEOC charge in order for this claim to be heard.

### C.   Retaliatory Failure to Let Plaintiff Return to Work

Defendant opposes Plaintiff's motion to amend, arguing that Plaintiff's amendment is futile because the second amended complaint fails to state a viable claim of retaliation against Defendant based on Plaintiff's new allegations regarding his return to work.  (*Id.*).  Defendant asserts that the proposed amended complaint fails to state a claim because:  (1) there was no adverse employment action; and (2) there is no causal connection between the protected activity and the alleged adverse action.

### 1.   Adverse Employment Action

Defendant contends that Plaintiff has not alleged an adverse employment action because Plaintiff's employment status with 7-Eleven did not change following its December 5, 2014 notification that Plaintiff could not return to work.  Defendant

33

argues that prior to and following this notification Plaintiff had the same employment status:  he was a 7-Eleven employee on unpaid leave.  In response, Plaintiff contends that Defendant's conduct constitutes an adverse action because Plaintiff has been deprived of his salary from the period of his promised return to work until he is permitted to return to work.

Plaintiff has sufficiently alleged that Defendant's decision to cancel his return to work from approved unpaid medical leave is an adverse employment action because it affects the terms, conditions, or benefits of Plaintiff's employment. Defendant's decision not to let Plaintiff return to his paid position certainly causes a significant change in benefits as Plaintiff had purportedly been promised a paid position starting on December 9, 2014, and Defendant revoked that promise, depriving Plaintiff of work and an income. *Hoyle,* 650 F.3d at 337; *see also Johnson v. Baltimore City Police Dep't*, No. CIV.A. ELH-12-2519, 2014 WL 1281602, at *19 (D.Md. Mar. 27, 2014) (noting that a Plaintiff who has alleged that her medical suspension cost her "significant income" alleged an adverse employment action); *Boone*, 178 F.3d at 255 (an adverse employment action has been found in cases of decrease in pay or benefits).  An employer's approval of an employee's request for unpaid medical leave with the understanding that the employee can return to work once well, and subsequent refusal to let the

34

employee return to work because he has engaged in protected activity would likely dissuade a reasonable employee from engaging in a protected activity. Accordingly, Plaintiff has plausibly alleged that Defendant's decision not to let him return to his position as a Field Consultant after promising him as much is an adverse employment action.

### 2. Causal Connection

Defendant contends that no causal connection exists because of the twenty-three month lapse between Plaintiff's filing of EEOC Charges and 7-Eleven's notification that there was no Field Consultant position available for him. (ECF No. 19, at 6). Plaintiff contends that the unusual sequence of events leading to Defendant's eleventh hour cancellation of Plaintiff's return to work shows that Defendant was motivated by retaliatory animus. (ECF No. 20, at 10).

Defendant points to Plaintiff's filing of initial EEOC charges, arguing that too much time has passed since this protected activity to show causation. Defendant fails to acknowledge Plaintiff's more recent activity, however, of filing the current lawsuit to enforce his Title VII rights. *See Vance v. Chao,* 496 F.Supp.2d 182, 184-87 (D.D.C. 2007) (finding on a motion to dismiss that the plaintiff had sufficiently alleged causation because her ongoing engagement in a lawsuit and drawn-out settlement talks from 2000 until 2004 was sufficiently close

in time to the employer's adverse action of giving her a poor performance appraisal in 2004).  Plaintiff has plausibly alleged a causal connection between his filing this suit in June 2014 and Defendant's failure to let him return to work in December 2014.  The temporal connection between these events is not twenty-three months, but essentially concurrent because the lawsuit is still ongoing.  Moreover, Plaintiff has provided sufficient facts to suggest that Defendant's reason for failing to let him return to work was retaliatory.  Plaintiff was approved for unpaid medical leave in February 2014, and while out on leave he filed this lawsuit against 7-Eleven.  Saunders assured Plaintiff throughout the fall of 2014 that he could return to his position on December 9, and then four days before Plaintiff was due to return to work he swiftly changed his mind, informing Plaintiff that he had forgotten to check staffing levels and that Plaintiff could not actually return to work.  Moreover, Saunders informed Plaintiff to check back in thirty days, but also notified Plaintiff that he need not attend a 7-Eleven conference that was more than thirty days away, indicating that 7-Eleven may have no plan in the immediate future or ever of allowing Plaintiff to return to his position.  Taking these allegations as true, Plaintiff has plausibly alleged that 7-Eleven refused to let him return to work in retaliation for his filing of the current lawsuit.  Accordingly,

Plaintiff will be given leave to amend his complaint to add these additional allegations.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant will be denied, and Plaintiff's motion for leave to file a second amended complaint will be granted.  A separate order will follow.

 

 

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
